PECK & MACK CO. v. KLINE, Appellant

———

(June 7, 1926, Opinion and Decree.)
(July 5, 1926, Rehearing Refused.)

———

*(Syllabus by the Court.)*

1. **Louisiana Digest—Sales—Par. 219.**

A purchaser cannot refuse to pay the price of goods on account of apparent defects which he might have discovered by simple inspection.

Appeal from Civil District Court, Div. "E", Hon. Wm. H. Byrnes, Judge.

Action by Peck & Mack Co. against Wm. Kline.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Dart, Kernan & Dart, of New Orleans, attorneys for plaintiff, appellee.

Paul W. Maloney, of New Orleans, attorney for defendant, appellant.

### OPINION.

CLAIBORNE, J. This is a suit for barbed wire sold and delivered.

The plaintiffs alleged that on August 9, 1921, they sold and delivered to the defendant 350 reels of painted barbed wire at the price of $2.56½ per bale making a total of $1005.48 which defendant has failed to pay.

The defendant answered on May 30, 1922. He denied any indebtedness.

He alleged that "instead of the painted barbed wire, the plaintiff shipped wire dipped in creosote which was rusty, of no value, and not in accordance with the agreement of purchase which called for painted barbed wire".

He filed a reconventional demand in which he claimed $315.19 and $20 per month for this; that the plaintiff shipped what is known as creosoted wire which has no market in this section and is of no value; that defendant refused to pay for the same for the reason given and plaintiff promised to take the wire back but ultimately refused to do so; that the defendant paid the freight amounting to $135.19 and put the wire in his warehouse; that the storage thereof is worth $20 a month and amounts now, after nine months, to $180 which defendant claims.

There was judgment for plaintiff for $1005.48 with legal interest from August 31, 1921, subject to a credit of $155.71.

A new trial was applied for on the ground, among others, of newly discovered evidence.

That consisted of the testimony of Dr. Cline, an expert chemist who inspected the wire since the submission of this case, and reported to defendant. "that the wire was painted after it had become rusty and was therefore worthless and could not be used".

This suit was filed in May, 1922, and was tried in July, 1923. The defendant had ample time to procure the testimony sought to be introduced. The condition of the wire was the very gist of the case and the testimony of the expert cannot be classed as newly discovered evidence. The Code of Practice, Art. 500, provides:

"If the party has discovered, since the trial, evidence important to the cause, which he could not with due diligence, have obtained before."

The new trial was properly refused.

E. S. Rock, salesman for the plaintiff, testified that they carry a large line of barbed wire both naked and painted or dipped wire; wire is not painted with a brush, it is dipped in asphaltum as the best coating; has never heard the expression "dipped barbed wire"; in June, 1919, the plaintiff purchased from the French government all the naked and painted barbed wire owned by the government and stored in the United States; they offered the wire to the trade; in July, 1919, defendant bought a quantity of it which was shipped to him and for which he paid; in July, 1921, the defendant came to plaintiff's store in New York and ordered 350 rolls of black painted barbed wire at $2.56½ per pound delivered at New Orleans; at that time he inspected a sample roll which was identical with the wire shipped to him in 1919, and identical with the wire shipped to him in 1919 and identical with the wire shipped to him in 1921; witness came down to New Orleans to try to adjust the matter, they were told that defendant would not return the wire or ship it to other customers until he was paid all storage charges and freight bills to New Orleans; witness saw Mr. Maloney, attorney for defendant, who said that the wire had been misrepresented to Mr. Kline and that he had advised him not to accept the shipment or pay for the same until they had paid all the handling charges; witness made certain offers of compromise to the defendant which were not accepted by the plaintiff. Barbed wire is of three kinds, plain or naked, painted, and galvanized; the plain wire has no coating, the painted wire received a coating of some preservative, on account of its nature it would be impossible to paint it with a brush, so it is dipped; the defendant had purchased

this wire previously, so he knew what painted wire was; the preservative may be asphaltum and not creosote; witness inspected the wire thoroughly while in New Orleans and thought it was in excellent condition with the exception of very few coils which showed a spot of rust on the very points of the barb; in fact in good condition, if not better than the previous shipment to the defendant. The wire was not rusty and was painted in the same manner as all wire he ever saw.

Morris Sandusky, general manager and president of the Sandow Tool Co. of New Jersey, in their business has had occasion to buy and sell large tonnage of that class of material and has been in and around steel plants for a number of years; has also given instructions to others as to black and gray paint barbed wires with good results; the cheapest process of painting wire is by the spraying process similar to an atomizer; at the same time as the spraying wire passes through a blower which dries the paint on the wire almost as fast as it is sprayed on; another method of painting wire is dipping the entire reel in a large vat containing the painting solution, then removed to a drying room where the paint soon dries on the wire; that is the older method. The only object of either method is to apply a coating to prevent a naked surface and consequent rusting.

The defendant Kline admits that he bought the wire and that the bill is correct, but he never saw a sample; he was told that it was black wire, painted, in good condition; he was not in New Orleans when the wire arrived, not before two or three months afterwards; "the wire was sold at a price a little below the market price", he has been handling barbed wire for "20 odd years"; the wire did not look painted to him, it looked stained with creosote; it was rusty; he attempted to sell it and several rolls were brought back; he offered it to Baldwin and to Stauffer-Eschleman, and they gave him "the haha", "the laugh"; wire is painted with a brush or a dip, he supposes; he does not know the formula it goes through. Wire comes in a roll and sells for 3 or 3½ or 3¾ cents a pound; when he saw the wire it looked to him very "bum", looked like dipped in creosote, he supposes; during the war they dipped it; there is no market for dipped wire; southern people don't want it.

Miss Mabel Kline, daughter of defendant, runs the store in his absence. She received the wire during defendant's absence from the city; "more than half of it was rusty, coated with rust; other portions looked like it had been dipped or had some kind of black liquid on it"; she knows nothing about painted barbed wire.

Paul W. Maloney, attorney for defendant, testified that he had examined the wire with Mr. Kline one afternoon, and it looked to him as if it was not painted; it was rusty and in very bad condition, and he advised defendant to reject the entire shipment.

John W. Burdette has had experience with barbed wire; the painting is done with an air brush; it is sprayed; dipping is by far better than spraying.

The first difficulty in defendant's way is that the defects he complains of are patent or apparent, such as he might have discovered by simple inspection, concerning which the law grants him no relief. C. C., 2521.

Plaintiff's witness Rock, testifies that the defendant had purchased some of this wire two years before, and had received it and paid for it. This is not denied by de-

fendant. Therefore he must have known what he was buying.

The same witness also testifies that defendant was shown a sample of this wire at the time he bought.

It is true that defendant denies this; but it is the testimony of one witness pitted against another.

"The burden of proof is upon the buyer to establish the defects of which he complains. In the absence of such proof he must fail." 12 Orl. App. 352; 13 id. 165.

The defendant purchased for a price below the market. That must have been an information to him that the wire was not in the best condition. 12 Orl. App. 213.

But the most convincing argument comes from the defendant himself.

On September 28, 1921, defendant writes to plaintiff as follows:

"Regarding bill of August 9th, covering 350 rolls barbed wire, I want to be real frank with you and will say I made a mistake in buying same. We cannot sell anything but the galvanized barbed wire in this section, a point I was not familiar with at the time of purchase. However, I am willing to keep 100 rolls of this wire, and take a chance of moving same and will hold, subject to your order, 250 rolls, with free storage, until you dispose of same. If this is agreeable to you will remit you check for the 100 rolls on receipt of your reply."

When plaintiff refused the offer contained in this letter, then defendant wrote the following letter, to the plaintiff on October 6, 1921:

"Your letter of the 3rd to hand, relative to painted barbed wire. I note carefully your remarks. Our Mr. Kline had just recently arrived home, and admits himself that he made a mistake in buying this wire. I will give your names and addresses of large local jobbers who will tell you if you ask that they positively cannot sell the painted wire in this locality, nothing but galvanized wire is marketable. If however you can assist me in disposing of the painted barb wire, I will appreciate it, the error was mine, or rather our buyer's, but we figured you would have a daily market for it, while we probably would never move it. Get busy and see what you can do in rolling it out. I will do my share of it from this end. The names of local jobbers I spoke of, who will not handle painted wire are Baldwin & Co., Stauffer-Eschleman and Co., Woodward Wight and Co., Pitard-Saxon Hardware Co. and United Hardware Co."

On December 7, 1921, defendant again writes:

"Again referring to invoice of barb wire dated August 9, 1921, I will again state that I am willing to keep and pay for 100 rolls of this barb wire, although I honestly have not sold 10 rolls of this stock, but I will keep 100 rolls and pay you for them, and hold the balance subject to your order, or ship same back to you by boat. This is dead stock in this section, as I have told you in previous correspondence, and nobody wants it here."

The plaintiff rejected this offer.

There is no intimation in any one of these three letters that the wires were not painted, or that they were rusty and worthless. On the contrary, the defendant proffers his services to sell them to others.

It was only on December 30, 1921, presumably upon the advise of his attorney, that defendant wrote to the plaintiff that he would not keep any of the wire, not one reel, because the wire was not painted, was rusty and worthless.

From the testimony, as a whole, we are bound to believe that the defendant made every possible effort to cancel his purchase because there was no market for that class of wire rather than for any defect in the quality of wire he had purchased.

The trial judge was of that opinion and his judgment is therefore affirmed.